M. ROSE *vs.* G. TROUSSEAU, Administrator with Will

Annexed of Estate of His Majesty Kalakaua.

EXCEPTIONS.

HEARING, MARCH 7, 1892. DECISION, MAY 25, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

The action was for breach of a covenant by an adopting parent that he would properly clothe, feed, educate and care for the minor son of the plaintiff as a good, faithful and prudent father should. The part of the charge of the Court, *i.e.*, " that if, in his opinion, the King thought it was proper for the boy to live with his mother, he had a right to allow him to do so. * * * It was a matter for the King alone to judge of, whether to send the boy to live with his mother or not:" held erroneous, as taking away from the jury the right to pass upon the question whether the act was that of a " good, faithful and prudent father."

But as the whole case shows no damages proven, the Court allows a new trial only to ascertain if there had been a breach of the covenant, and if so found, the damages to be nominal with costs.

An instruction to the jury that " defendant was not liable for the willful acts of the minor in not going to school," meaning that the defendant was not liable for such acts done without the knowledge or consent of the adopter, held not erroneous.

OPINION OF THE COURT, BY JUDD, C.J.

This a peculiar case. An action of covenant is brought to recover damages laid at $5000, by the plaintiff, the father of one Mathias B. Rose, a minor, who gave him during his minority in adoption to the late King. The articles of adoption are dated the 6th December, 1886, and they show that M. Rose gave " absolutely to His Majesty the King, to keep as his child, Mathias B. Rose, aged 15 years, in Honolulu, the minor son of said Moritz Rose, upon condition that His Majesty the King do treat said Mathias B. Rose as his own son in all respects, and properly clothe, feed, educate and care for him until he shall have arrived of legal age." And His Majesty the King covenanted with M. Rose "to care for said Mathias B. Rose in all respects as a good, faithful and prudent father should, and to properly feed, clothe, support and educate said minor until he shall have arrived of age."

The complaint alleges breach of the covenant. in that the King, during his lifetime and during the .minority of said Mathias B. Rose, did not nor would care for said Mathias B. Rose, as a good, faithful and prudent father should, and did not properly clothe, feed, support and educate said M. B. Rose, and the Administrator, since the decease of the King, has not cared for, clothed, fed, supported and educated the said minor.

The case was tried by a jury, who rendered a verdict for the defendant. The only exceptions relied upon by the plaintiff are to the Court's certain instructions to the jury. First, the Court said : " If, in his opinion, the King thought it was proper for the boy to live with his mother he had a right to allow him to do so. He was not bound to keep the boy at his own house. It was a matter for the King alone to judge of, whether to send the boy to live with his mother or not." Second : " That defendant is not liable for the willful acts of the minor in refusing to go to school."

The Court charged the jury that " the first point for them to consider was whether there had been any breach of the agreement of adoption on the part of the King." " Has His late

Majesty the King carried out to the best of his ability what he agreed to do? That will be your first consideration." The question of breach was thus properly left to the jury, in general terms. But further on in the charge the Court said : " Something has been said in regard to the boy living with his mother. The King under his agreement was bound to use or exercise proper care over the boy, but was not bound under this contract to have him live in the same house with him." We can see no objection to the charge thus far. The Court continued : " If, in his opinion, as a prudent parent, he thought that the boy would be better off with his mother, who was married at that time to her present husband, if he thought it was proper for the boy in his judgment to live with his mother, he had the right to send him there. He was not bound, as I have said, to keep the boy in his house." This part of the charge would seem to imply that the King was not to be held responsible for any act respecting the boy, if in his judgment it was a wise and prudent thing to do, whereas the wisdom of any act, or its nature, and whether it constituted a breach of the agreement, should have been left to the jury.

The Court here characterized the particular act in sending the boy to live with his mother as one which he had a right to do. The jury were properly the judges of this, and not the Court. But upon a careful review of the whole case, we do not see that the plaintiff could have recovered any damages, even if the charge had been without error. The complaint alleges a breach of the covenant to the damage of the plaintiff, who is the father of the boy adopted, and who made the agreement with the King. The Court properly instructed the jury that "if they believed the contract was not kept by His Majesty, plaintiff can recover only such damages as he has suffered, and not damages which the minor has suffered, the minor having his right of action on his own account."

Also, that " the value of the boy's services is not the measure of damages for breach of contract ;" also, " wounded feelings of the parent cannot be taken into consideration, nor can exemplary damages be recovered."

Having thus eliminated from the case the right of the plain-
tiff to recover for the injury to his feelings as a parent, on ac-
count of the breach of the covenant of adoption, and that the
value of the boy's services was not the measure of damages, and
that the injury to the boy could not be recovered in this action
by the father, we find nothing in the evidence that would have
warranted a verdict for any damages in favor of the plaintiff.
We find no evidence of any actual damages suffered by the
plaintiff. If the jury had found a breach of the agreement on
the part of the King, the verdict would have to be merely nom-
inal with costs.

The second ground of exceptions is that the Court charged the
jury that "defendant was not liable for the willful acts of the
minor in refusing to go to school." And it is claimed that the
willful acts of the minor do not relieve the adopting parent of
his covenant to educate. It seems to us that the Court meant
that the act of the minor in refusing to go to school, in so far as
it was without the knowledge of and incapable of being prevent-
ed by the adopting parent, he was not to be held liable for.
The absenting of the boy from school, if done without the know-
ledge or consent of the adopter, would be "willful." We do not
think the instruction was erroneous.

But the form of the verdict being general for the defendant,
we are unable to ascertain whether the jury found that there
had been a breach of the covenant or not, and therefore we will
allow a new trial to ascertain this, and the verdict, if the jury
shall find a breach, will be ordered to be for nominal damages
and costs.

*A. S. Hartwell* and *W. O. Smith*, for plaintiff.

*F. M. Hatch*, for defendant.